## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HENRY BETHEA, | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Civil No. 3:10-cv-744 (JCH) |
| | : | |
| MICHAEL J. ASTRUE, COMMISSIONER | : | |
| OF SOCIAL SECURITY | : | March 17, 2011 |
| ADMINISTRATION, | : | |
| Defendant. | : | |

## RULING ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

This action, filed under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), seeks review of a final decision by the Commissioner of Social Security denying plaintiff Supplemental Security Income benefits ("SSI"). For the reasons stated herein, plaintiff's Motion for Judgment on the Pleadings [Doc. No. 8] is granted, and the Commissioner's decision is remanded for additional administrative proceedings consistent with this Ruling.

## I. PROCEDURAL HISTORY

Plaintiff filed a claim for SSI on March 14, 2007. His claim was denied at the initial stage and then, on June 6, 2008, it was denied by a Federal Reviewing Officer. Plaintiff requested an administrative hearing on July 15, 2008. On September 8, 2009, a hearing was held before Administrative Law Judge ("ALJ") Ronald Thomas. In a decision dated December 18, 2009, ALJ Thomas found that plaintiff was not disabled. Comments were submitted to the Decision Review Board in support of plaintiff's claim on January 8, 2010. On March 23, 2010, however, the Decision Review Board issued a notice that it had not completed its review of the claim within 90 days, and therefore ALJ Thomas's decision became the final decision of the Commissioner.

On May 13, 2010, plaintiff filed a Complaint in federal court alleging that he became disabled and unable to work on January 1, 2007, due to the Human Immunodeficiency Virus ("HIV") and a chronic abdominal wall hernia. Compl. ¶ 4. His Complaint requests that the court reverse the Commissioner's decision that he is not disabled. On September 10, 2010, plaintiff filed a Motion for Judgment on the Pleadings.

## II. BACKGROUND

### A. Employment and Medical History

Plaintiff is a fifty-two year old, single male. Social Security Record ("R.") at 16, 235. He dropped out of school after completing the seventh grade and has very limited reading skills. Id. at 18. He was living with his sister and her two children at the time of his administrative hearing. Id. at 17.

His most recent employment was driving a forklift at a paper company, which he did from 2004 to 2006. Id. at 18-20. In 2006, he was incarcerated for four months and lost his job. Id. at 18-19. His work history prior to his employment at the paper company included working as a chicken bagger from 1992 to 1994, a maintenance worker at a steel company in 1993, a brick mason from 1996 to 1997, and a fork lift and raymour operator from 1997 to 1998. Id. at 113.

On February 19, 2007, plaintiff was seen by Dr. Robert Bruce at Yale-New Haven Hospital due to complaints of abdominal pain. Id. at 183-187. The records from this visit note that plaintiff had multiple surgeries following a gun shot wound and

stabbing in the 1970s, including removal of the right kidney and colon resection for a hernia, and that his medical history included development of an abdominal wall hernia and diagnosis of an HIV infection. Id. at 183, 187. He currently had symptoms of right-sided anterior abdominal hernia. Id. at 187. Upon examination, Dr. Bruce noted that plaintiff had tenderness in the right upper quadrant of his abdomen, but that there were no masses or rebound. Because he found no evidence of an obstruction in plaintiff's abdomen, Dr. Bruce questioned whether plaintiff's pain was caused by a hernia or by another pathology, and he recommended a CT scan of plaintiff's abdomen. Id. at 184. The records from this visit also note that plaintiff was taking three antiretroviral agents for HIV and Oxycodone, a pain medication. Id. at 183.

Plaintiff's CT scan took place on March 5, 2007. It showed a small, posterolateral right abdominal wall defect with a portion of the posterior right hepatic lobe abutting the defect. Id. at 214. The records from the CT scan note that no evidence of a bowel hernia or other bowel obstruction was found and that the findings represented no significant change from plaintiff's previous CT scan on November 22, 2005. Id. On the same day, plaintiff met with his social worker, who advised him to file an application for disability. Id. at 336.

Dr. Bruce also referred plaintiff to Dr. Lydia Chwastiak, a board certified psychiatrist, who evaluated plaintiff on March 26, 2007. Id. at 215. Plaintiff reported a history of depression beginning in his childhood and stemming from physical, emotional, and sexual abuse. He was hospitalized multiple times for psychiatric symptoms beginning at age fifteen after he attempted suicide by shooting himself in the abdomen. He admitted to vague psychotic symptoms, including hallucinations of

friends who had passed away and suspiciousness that Dr. Chwastiak noted "may be consistent with paranoid ideation." Id. Plaintiff also reported a persistently depressed mood since his release from prison in 2006, including impaired sleep, poor appetite, poor concentration, social isolation, withdrawal, and severe psychosocial stress stemming from the death of family members during the previous two years. Id. A mental status evaluation revealed mild psychomotor retardation, guarded appearance, limited eye contact, constricted affect, depressed mood, and visual hallucinations. Id. at 216. Dr. Chwastiak also noted that plaintiff had symptoms of severe depression and psychosis, which might reflect a psychotic disorder or severe post-traumatic stress disorder. Id. She diagnosed him with Axis I major depressive disorder that is "severe with psychotic features vs schizoaffective disorder" and the possibility of post-traumatic stress disorder and an Axis II disorder of antisocial traits. Id. She assessed Plaintiff's Global Assessment of Functioning ("GAF") score at 50.[1] A GAF score in the range of 41 to 50 indicates "[s]erious symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning ( e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). She also discussed treatment options for depression and advised plaintiff to engage in group or individual psychotherapy. R. at 216.

In March and April 2007, Dr. Bruce completed two forms regarding plaintiff's HIV

---

[1]The GAF scale is used to measure an individual's overall function capacity. The scale ranges from 1-100; a higher score indicates less severe symptoms.

status.  In the Medical Report On Adult With Allegation Of Human Immunodeficiency

Virus (HIV) Infection, which was submitted to the Social Security Administration and

dated March 14, 2007, he noted that plaintiff had been diagnosed with HIV through

laboratory testing.  Id. at 180.  He checked boxes indicating that the HIV infection had

resulted in "marked restriction of activities of living activities" and "marked difficulties in

maintaining social functioning."  Id. at 182.  He also noted that plaintiff's abdominal pain

of unclear etiology had resulted in an inability to perform activities of daily living or work.

Id.  In the HIV Questionnaire for the State of Connecticut, which is dated April 3, 2007,

Dr. Bruce again reported that plaintiff had been diagnosed with HIV.  Id. at 233.  He

also noted that plaintiff had been referred for psychiatric evaluation and treatment for

symptoms of depression.  Id. at 234.

On June 4, 2007, plaintiff had a follow-up appointment with Dr. Bruce, during

which he complained of increased pain in his abdomen.  Id. at 351.  The medical

records from this visit note that the pain had resulted in decreased activities of daily

living ("ADLs" ), that plaintiff was "taking [an] increased number [of] pain medications in

order to meet ADLs", and that he had "tried to work, but was in too much abdominal

pain."  Id.  Dr. Bruce noted that he was increasing plaintiff's pain medication and would

reevaluate him in four weeks.  Plaintiff was prescribed Oxycodone, a pain medication,

and Seroquel, an antipsychotic used to treat bipolar disorder and depression.  Id.

However, his antiretroviral drugs were stopped because he had a high CD4 count.  Id.

On June 18, 2007, Dr. Hannah Miller performed an elective colonoscopy on

plaintiff at Yale-New Haven Hospital.  The procedure revealed several small polyps and

small internal hemorrhoids.  Id. at 272.

On June 25, 2007, plaintiff returned to Dr. Bruce and reported that his abdominal pain had continued. Id. at 266. Dr. Bruce noted that, even after plaintiff's recent colonoscopy, the pain was of unclear etiology and was possibly psychological in origin. He recommended an upper endoscopy to ascertain if plaintiff's stomach fold enlargement was related to his pain. If the upper endoscopy proved to be unrelated, Dr. Bruce noted that he "favor[ed] [a] mental health etiology for pain due to patient's prior history of abuse/trauma." Id. at 267. The notes from this visit also indicate that plaintiff was still taking Oxycodone and Seroquel.

On July 5, 2007, plaintiff was evaluated by Dr. Frank Mongillo at the request of the Social Security Administration. Id. at 235-36. Dr. Mongillo's report noted that plaintiff had multiple medical problems, including an incisional hernia in the abdominal wall, chronic lower back pain, and HIV positive status. During his physical evaluation of plaintiff, Dr. Mongillo noted that he walked with a stiff gait but otherwise appeared comfortable. Id. He also noted multiple scars in plaintiff's abdominal area, a protusion in the right upper quadrant of the abdomen consistent with an incisional hernia, mild crepitus in the knees, and tenderness and spasm in the lumbosacral region of the back. Id. at 236. Dr. Mongillo's assessment concluded that plaintiff's HIV appeared to be under control, that his abdominal discomfort, which appeared to stem from the incisional wall hernia, could make it difficult for plaintiff to bend or lift, and that plaintiff had chronic lower back pain for which he was currently on OxyContin. Dr. Mongillo found that, "[w]hile the patient could probably not tolerate a job that was extremely physically intensive, he certainly could do some sedentary or light work." Id.

In July 2007, two non-examining physicians reviewed plaintiff's medical records

on behalf of the Social Security Administration. On July 16, 2007, Dr. Virginia Ritter prepared an assessment of his residual functional capacity. Id. at 237-44. She concluded that plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently, and he could sit or stand and/or walk, for about six hours in an eight-hour workday. Id. at 238. On July 30, 2007, Dr. Mark Dilger completed a Psychiatric Review Technique, which concluded that, although plaintiff had a history of major depression, as well as symptoms of post-traumatic stress disorder and antisocial traits, his mental impairments were not severe. Id. at 247, 250, 252, 254, 259. He found that these mental impairments resulted in only a mild restriction of activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence, and pace. Id. at 257.

On July 20, 2007, Dr. John Francis, a board certified internist with a specialty in infectious diseases, evaluated plaintiff at Yale-New Haven Hospital. Id. at 274-76. Plaintiff complained of chronic pain in his abdomen, back, knee, and joints. He rated his pain as a nine on a one-to-ten scale, but said that "meds help when he 'doubles up' on his dose." Id. at 275. Dr. Francis diagnosed chronic abdomen pain and chronic back and knee pain, and noted that mental health treatment was to be followed up with Dr. Chwastiak. Id. at 276. He noted that plaintiff continued to take Seroquel and OxyContin, and that his CD4 count of 557 indicated that he had not yet contracted AIDS. Id. at 274, 276.

Dr. Francis completed a Multiple Impairment Questionnaire dated February 20, 2008. Although plaintiff claims to have sent this document to the Federal Reviewing Official on June 4, 2008, it was not included in the documents considered by the

Federal Reviewing Official or the ALJ, and it is not part of the transcript. In the Questionnaire, which has been included with plaintiff's Memorandum of Law, Dr. Francis noted that plaintiff had been seen every three months from July 2007 to February 2008. Pl.'s Mem. Ex. A, at 1. Plaintiff's primary symptoms were described as chronic abdominal, back, and knee pain, and his pain was rated as moderate to severe. Id. at 2-3. Dr. Bruce diagnosed HIV, abdominal wall hernia, depression, chronic abdominal pain, and chronic knee and back pain. Id. at 1. The clinical findings supporting this diagnosis included a CT scan showing posterolateral right abdominal wall defect, an HIV viral load of 5,420, and a CD4 count of 677. Id. Dr. Francis opined that, during an eight-hour work day, plaintiff could sit for a maximum of two hours, and he could stand or walk for a maximum of one hour. Id. at 3. He also opined that plaintiff could lift and carry between twenty and fifty pounds occasionally, that plaintiff would have significant limitations in reaching and lifting due to his pain, and that depression contributed to his symptoms. Id. at 4-6. He believed that plaintiff's symptoms would increase if he were placed in a competitive work environment and that he would likely be absent from work more than three times a month. Id. at 5, 7.

On August 30, 2008, plaintiff was admitted to Yale-New Haven Hospital with complaints of severe chest pain associated with shortness of breath and a period of nausea and vomiting. R. at 290. Dr. Olubunmi Otolorin diagnosed chest pain, previous alcohol abuse, and dyslipemedia. Id. Plaintiff's cardiac enzyme testing was negative and his electrocardiogram showed no change from a prior electrocardiogram performed in 1998. Id. at 292. Plaintiff was treated overnight and discharged the next day. On September 4, 2008, he had a follow-up visit for his chest pain, during which he reported

continued but diminished chest pain and stomach pain.  Id. at 460.

The following day, plaintiff was seen in the emergency room of Yale-New Haven Hospital due to complaints of right upper quadrant abdominal pain.  Id. at 429.  An examination revealed a scarred and distended abdomen, as well as some tenderness in the abdominal area.  Id. at 430.  Plaintiff was diagnosed with a right upper quadrant hernia, and elective surgery was scheduled.  Id. at 431.

On September 17, 2008, plaintiff presented to the Yale-New Haven Hospital emergency room with complaints of severe chest pain, shortness of breath, and diaphoresis.  Id. at 443.  He was diagnosed with chest pain and advised to have a cardiology consultation.  Id. at 446.  On October 30, 2008, plaintiff was seen at the emergency room again with complaints of chest pain that worsened with deep breathing and movement, as well as a cough and chills.  Id. at 415.  He was diagnosed with bronchitis with chest pain.  Id. at 417.

On November 7, 2008, plaintiff underwent elective surgery that included abdominal wall exploration of the right upper quadrant.  Id. at  357.  The surgery uncovered abdominal wall adhesions.  Id. at 357-58.

On November 19, 2008, plaintiff had an appointment with Dr. Francis, during which he complained of back discomfort that was controlled with pain medications and continued chest and stomach pain.  Id. at 469.  Dr. Francis diagnosed chronic abdominal pain, chronic back and knee pain that was well controlled with pain medications, and mental health issues to be followed up with Dr. Chwastiak.  Id. at 470-71.

Plaintiff's next visit with Dr. Francis was on February 11, 2009, during which he

complained of lower back and knee pain, and left hand and facial numbness. Id. at

476. He also reported no improvement in his abdominal pain since his November

operation. Id. at 478. The doctor recommended a neurological examination for the

numbness. Id. In a follow-up visit with Dr. Francis in February 24, 2009, plaintiff again

complained of persistent left arm numbness. Id. at 482.

On May 27, 2009, during a follow-up appointment with Dr. Francis, plaintiff

expressed concern about his weight loss and requested highly active, antiretroviral

therapy for HIV. Id. at 486. He also reported knee, hip, stomach, and joint pain, as well

as the sensation that "his intestines are bulging out again." Id. Although Dr. Francis

explained to plaintiff that his high CD4 and viral load count indicated that antiretroviral

drugs were not warranted, he nevertheless prescribed Atripla, an antiretroviral drug. Id.

at 488. Soon thereafter, on July 6, 2008, Dr. Francis diagnosed plaintiff with depressive

disorder. Id. at 490.

**B. Administrative Hearing and Ruling**

On September 8, 2009, plaintiff appeared for a hearing before ALJ Thomas to

determine his eligibility for SSI. Plaintiff testified that he was fifty years old and that he

lived with his sister and her two children. R. at 17. He said that he had lost his most

recent employment as a forklift driver when he went to prison for four months in 2006.

Id. at 18. Since his release from prison, he had been unable to work because of the

sensation that a hernia was popping out of his stomach. Id. at 19-20. In 2005, surgery

had been performed to fix the hernia and a mesh had been placed near his stomach to

avoid recurrence of the hernia. The hernia, however, reappeared in another part of his

abdomen, which Plaintiff attributed to "the walls of my stomach [being] no good" such

that "it find[s] another place to come out." Id. at 20. He said that the hernia can "pop out" when he sits down, sneezes, or even "move[s] wrong." Id. at 25. However, he only feels pain from the hernia when he exerts himself, although it also negatively affects his ability to lay down and fall asleep. Id. at 25-26. He sleeps for about five and a half hours each night and feels tired throughout the day. Id. at 26. He takes OxyContin to relieve the pain. Id. at 25.

He also reported that Dr. Francis was treating his HIV, that he saw his doctor every three months, and that his T-cell count was "around 200." Id. at 21, 23. He started a cocktail of medications to treat his HIV about four months ago and reported that these medications had caused nightmares and hallucinations. Id. at 24-25. Plaintiff also reported that his weight had dropped from 180 to 155 pounds, which he attributed to HIV and loss of appetite. Id. at 24.

In a decision dated December 17, 2008, ALJ Thomas found that plaintiff did not have a disability. His decision analyzed plaintiff's alleged impairments using the five-step sequential evaluation process for determining whether an individual is disabled pursuant to 20 C.F.R. § 416.920(a). The first step requires a determination of whether the claimant is engaged in substantial gainful activity, which is defined as work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, analysis proceeds to the next step. At the second step, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe, i.e., whether it has a significant effect on the claimant's ability to function. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has an impairment or combination of impairments, the

analysis proceeds to the next step. Step three requires a determination of whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment contained in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment or combination of impairment meets the criteria of the listing and the duration requirement, the claimant is disabled. If it does not, the analysis proceeds to the next step. Step four requires a determination of whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the analysis proceeds to the last step. At the last step of the process, the ALJ must determine whether, taking into consideration the claimant's capacity, age, education, and work experience, there are other jobs in the national economy which can be performed by the claimant. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can perform other jobs that exist in significant numbers in the national economy, he is not disabled.

ALJ Thomas found at step one that, because plaintiff has been unemployed since 2006, he has not been engaged in substantial gainful activity. R. at 10. At step two, he found that plaintiff had the following severe impairments: HIV, history of gun shot wound, and abdominal hernia. Id. Because there was no evidence of ongoing treatment, ALJ Thomas found that plaintiff's depression was not a severe impairment. Id. At step three, he determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Id. At step four, he found that, "only by giving the claimant the overwhelming benefit of the doubt [does] the undersigned find[] that he is not capable

of performing any of his past relevant work." Id. at 11.  At step five, he concluded that

plaintiff had the residual functional capacity to perform the full range of light work as

defined in 20 C.F.R. § 416.967(b), and jobs existed in significant numbers in the

national economy that plaintiff could perform.  Id. at 10-11.  In making this last finding,

ALJ Thomas found that, while plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, plaintiff's statements

"concerning the intensity, persistence and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above residual functional capacity

assessment." Id. at 11.

ALJ Thomas made the following additional findings from the evidence in the

record.  Plaintiff has "a rather spotty work history," which is "noteworthy [because] in

July 2007 [plaintiff] reported that he had stopped working only because he was

incarcerated and that he did not return to his same job (of forklift operator) because his

employer did not want him back." Id. at 9.  His major medical impairment is his HIV

positive status, but "his physical condition is relatively stable, he does not have full

blown AIDS and there is no evidence of any opportunistic infections." Id.  Moreover,

blood testing revealed that plaintiff's CD4 count "remained well above the significant

level of 200." Id.  Plaintiff also has a history of stomach pain and abdominal hernia

stemming from a gunshot wound.  "However, after treatment the claimant does quite

well and there is no indication that this impairment would interfere with his ability to

perform work activity at the light level of exertion." Id.  Plaintiff also presented to the

emergency room on several occasions complaining of chest pains but, after extensive

evaluations, it was determined that the chest pains did not stem from cardiac trouble.

Id.  Finally, although plaintiff claims that he suffers from depression, he does not appear to be receiving any ongoing or regular treatment for this affliction.  Id.  In fact, "when the claimant appears for his frequently regularly scheduled appointments, he always reports that he is doing well without any problems."  Id.  ALJ Thomas also addressed the two forms filled out by Dr. Bruce in 2007 regarding plaintiff's HIV status, in which the doctor opined that plaintiff's HIV infection and abdominal pain rendered him unable to work.  Id. at 9-10.  ALJ Thomas concluded that the opinions expressed in these "two rote forms" "are no more than minimal scribbling and are inconsistent with the [Yale-New Haven Hospital] treatment notes, [so] they are not given controlling weight."  Id. at 10.

## III. STANDARD OF REVIEW

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on the legal error."  Shaw v. Carter, 221 F.3d 126, 131 (2d Cir. 2000).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004)).  "The court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Secretary of Health and Human Services, 733 F.2d 1037, 1041 (2d Cir. 1984).

**IV. DISCUSSION**

Plaintiff makes four arguments in support of his Motion for Judgment on the Pleadings reversing the Commissioner's decision: 1) ALJ Thomas violated the treating physician rule by not giving the opinions of Dr. Bruce and Dr. Francis controlling weight; 2) ALJ Thomas erred in finding that plaintiff's depression was a non-severe impairment; 3) ALJ Thomas failed to properly evaluate plaintiff's credibility; and 4) ALJ Thomas erred in holding that a finding of not disabled was mandated by the Medical-Vocational Guidelines. The court will address each of these arguments in turn.

**A. Treating Physician Rule**

In Social Security disability cases, "[t]he opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with the other substantial evidence." <u>Rosa v. Callahan</u>, 168 F.3d 72, 78-79 (2d Cir. 1999); <u>see also</u> 20 C.F.R. § 416.927(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). If a treating physician's opinion is not entitled to controlling weight, the proper weight to be accorded depends upon a number of factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." <u>Clark v. Comm'r of Social Security</u>, 143 F.3d 115, 118 (2d Cir. 1998); <u>see also</u> 20 C.F.R. § 404. 1527(d).

"Generally, . . . more weight [is given] to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations."  20 C.F.R. § 404.1527(d)(2).

Plaintiff claims that ALJ Thomas erred in refusing to give controlling weight to Dr. Bruce's opinion.  In a form requested by and submitted to the Social Security Administration on March 14, 2007, Dr. Bruce indicated that plaintiff's HIV infection had resulted in marked restriction in daily living activities and marked difficulties in maintaining social functioning, and that plaintiff's abdominal pain of unclear etiology had resulted in an inability to perform activities of daily living or work.  R. at 180-82.  The form does not include any medical findings that support these opinions, however.  ALJ Thomas concluded that the opinions expressed in the "rote forms" filled out by Dr. Bruce were "not given controlling weight" because they were "no more than minimal scribbling and are inconsistent with the [Yale-New Haven Hospital] treatment notes." Id. at 9-10.

Dr. Bruce's opinion on March 14, 2007, regarding the limiting effects of plaintiff's HIV infection, clearly conflicts with the other evidence in the record and thus is not entitled to controlling weight.  In the medical notes from plaintiff's appointments, both Dr. Bruce and Dr. Francis consistently note that plaintiff's HIV infection is asymptomatic, that his CD4 count is high, and that his infection is under control.  There is simply no evidence that plaintiff's HIV infection has limited his daily living activities in any significant way.

On the other hand, Dr. Bruce's opinion regarding plaintiff's inability to perform activities of daily living or work due to abdominal pain is supported by substantial evidence in the record. Dr. Bruce examined plaintiff at least three times from February 2007 through June 2007, and each time he noted that plaintiff's abdominal pain continued unabated. Id. at 184-87, 351, 266-67. In the medical records from plaintiff's appointment on June 4, 2007, Dr. Bruce noted that plaintiff's abdominal pain had resulted in his inability to work and decreased activities of daily living. Id. at 351. Although Dr. Bruce increased plaintiff's pain medication dosage on June 4, 2007, during a follow-up appointment on June 25, 2007, plaintiff stated that his abdominal pain continued. Id. at 351, 266.

Dr. Bruce's opinion is also supported by the opinion of another treating physician, Dr. Francis, who examined plaintiff several times from June 2007 through May 2009. Pl.'s Mem. Ex. A, at 1; R. at 469-71, 476-78, 482-84, 488-90. Because plaintiff consistently complained of persistent abdominal pain, Dr. Francis diagnosed chronic abdominal pain and prescribed pain medication. See id.

In finding that Dr. Bruce's opinion is not supported by substantial evidence, ALJ Thomas' ruling does not cite any evidence from the record that conflicts with Dr. Bruce's opinion, but rather notes, without any support from the record, that "after treatment [for the abdominal hernia] the claimant does quite well . . ." R. at 9. The medical records from plaintiff's visits with Dr. Bruce and Dr. Francis indicate that, contrary to ALJ Thomas' finding, plaintiff's abdominal pain is a chronic condition and that no course of treatment has provided lasting relief. The court therefore finds that ALJ Thomas' finding that Dr. Bruce's opinion was inconsistent with plaintiff's medical record is not

supported by substantial evidence.  This case is remanded for additional proceedings consistent with this ruling.

Plaintiff also argues that ALJ Thomas erred in not giving controlling weight to the opinion expressed by Dr. Francis in the Multiple Impairment Questionnaire dated February 20, 2008.  The reason ALJ Thomas did not giving controlling weight—or any weight at all—to the opinion is that the Questionnaire was not in evidence.  Plaintiff alleges that the Questionnaire was submitted to the Administration on June 4, 2008, and he has included with his Memorandum of Law a copy of the cover letter addressed to the Federal Reviewing Officer and the enclosed Questionnaire completed by Dr. Francis.  Pl.'s Mem. Ex. A.  The Administration responds that the Federal Reviewing Officer, who issued an opinion on June 6, 2008, enclosed a list of evidence that had been considered, and the Questionnaire was not on it.  Thus, the Administration contends that plaintiff was on notice that the Federal Reviewing Officer had not received the Questionnaire, and he should have resubmitted it.  Moreover, prior to the administrative hearing, plaintiff's representative was sent a CD that included all proposed exhibits and exhibit lists, which did not include the Questionnaire.  Because plaintiff's representative indicated he had no objection to the list of exhibits at the beginning of the hearing, the Administration argues that plaintiff has waived the right to consideration of the Questionnaire now.

Because the district court acts as an appellate court and not a trier of fact in social security cases, it may not consider evidence outside of the administrative record in reviewing a claim for benefits.  The court, however, may remand the case to the Social Security Administration for a new administrative determination if there is new

evidence, i.e., evidence that was not before the ALJ or Appeals Council, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  In deciding whether to remand this case for consideration of the new evidence presented in the Questionnaire, the court must determine whether the new evidence meets this showing.

"New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative,' and (3) there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" Williams v. Comm'r of Social Security, 236 F. App'x 641, 644 (2d Cir. 2007) (quoting Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).  The Questionnaire completed by Dr. Francis, which analyzes Plaintiff's medical condition from July 2007 to February 2008, contains a summary of plaintiff's primary symptoms, a diagnosis of his impairments, and a list of the clinical findings supporting the diagnosis.  Among other findings, Dr. Francis wrote that plaintiff suffered from chronic abdominal, back, and knee pain, rated his pain as moderate to severe, and indicated that a CT scan showing posterolateral right abdominal wall defect supported this finding.  Thus, the Questionnaire is relevant to plaintiff's condition during the time period he is alleging disability and probative of his claims regarding the severity of his hernia and the intensity of his pain.  Dr. Francis also opined that plaintiff's impairments would significantly limit the amount of time he could sit or stand in an eight-hour work day and would significantly diminish his ability to reach and lift.  Given that Dr. Francis opined not only as to the severity of plaintiff's

impairments, but also on plaintiff's ability to perform basic functions, the court finds that there is a reasonable possibility that, had this evidence been before the ALJ, he would have decided plaintiff's application differently.

The "good cause" analysis is inapplicable here because plaintiff contends–and the Administration does not deny–that the Questionnaire was submitted to the Administration prior to the decision of the Federal Reviewing Officer.  Although plaintiff could have realized that the Questionnaire was not part of the evidence considered by the Administration, this court does not believe a claimant should bear the consequences of the apparent misplacement of evidence by the Administration, particularly where the evidence goes to the heart of the issue of disability.  See Miller v. Barnhart, No. 03 Civ.2072(MBM), 2004 WL 2434972, at *10 (S.D.N.Y. Nov. 1, 2004) (holding that, where the court was unable to determine whether the Administration or the *pro se* claimant was to blame for failing to introduce all of her medical records into evidence, "the possibility that error may have been committed by the ALJ by failing to put plaintiff's HSS records into evidence is sufficient to constitute good cause for remand under § 405(g)").  Because plaintiff has satisfied the standard set forth in 42 U.S.C. § 405(g) for consideration of new evidence, this case is remanded to the Administration for consideration of the February 20, 2008 Questionnaire completed by Dr. Francis.

### B. Plaintiff's Depression

Plaintiff also claims that ALJ Thomas erred in finding that his depression was a non-severe impairment.  An impairment is not considered severe if it does not

significantly limit a claimant's physical or mental ability to perform "basic work activities."

See 20 C.F.R. § 416.920(c). With respect to mental function, "basic life activities" include "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. 416.921(b)(3-6).

ALJ Thomas based his conclusion that plaintiff's depression was not severe on his finding that he was not receiving any regular or ongoing treatment for the affliction. This finding, however, is inaccurate. Although plaintiff was not engaged in any group or individual psychotherapy during the relevant time period, Dr. Bruce prescribed Seroquel, an antipsychotic drug used to treat depression, to him in June 2007. R. at 351. According to subsequent medical records, he continued taking Seroquel through May 2009. Id. at 486.

ALJ Thomas also appears to have based his decision on a non-examining physician's finding that plaintiff suffered from no severe mental impairments. Id. at 247-60. In July 2007, Dr. Dilger found that plaintiff's mental conditions had resulted in only a mild restriction in activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence, or pace. Id. at 257. These mild limitations, Dr. Dilger concluded, indicated that plaintiff's medical impairments were non-severe.[1] Id. at 247.

What is puzzling about the non-examining physician's report, however, is that the

---

[1]It is unclear why the rote form filled out by Dr. Dilger, a non-examining physician, was considered persuasive evidence by the ALJ, whereas the rote forms filled out by Dr. Bruce, plaintiff's treating physician, were not.

analysis of plaintiff's condition appears to rely exclusively on the examination conducted by Dr. Chwastiak, which reached a different conclusion from that of Dr. Dilger.[2]  Dr. Chwastiak found that plaintiff had symptoms of a major depressive disorder and psychotic features, which might reflect a psychotic disorder or severe post-traumatic stress disorder.  Id. at 216.  She assessed plaintiff's GAF score at 50.  Id.  A score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning, such as an inability to maintain friendships or a job.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).  She discussed treatment options for depression with plaintiff and recommended psychotherapy.  R. at 216.  Not only did the non-examining physician fail to discredit Dr. Chwastiak's conclusions, but he included no explanation at all as to why his opinion deviated from Dr. Chwastiak's.

More importantly, as an examining physician, Dr. Chwastiak's opinion is entitled to more weight than that of a non-examining physician.  20 C.F.R. § 416.927(d)(1). This is especially the case with respect to mental health issues because "the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the claimant."  Westphal v. Eastman Kodak Co., No. 05-CV-6120, 2006 WL 1720380, at *4 (W.D.N.Y. June 21, 2006) (holding that a retirement plan administrator's sole reliance on the opinions of two non-examining, non-treating physicians in the face of conflicting evidence in determining that the plaintiff did not

---

[2]The non-examining physician's report cites parts of Dr. Chwastiak's report almost verbatim.  Both reports note that plaintiff was "casually dress and neatly groomed" for the appointment with Dr. Chwastiak, that plaintiff has "mild psychomotor retardation", and that he reported seeing dead people.  Id. at 216, 259.

have a psychiatric disability was an abuse of discretion); <u>see</u> <u>also</u> <u>Rodriguez v. Astrue</u>, No. 07 Civ. 534(WHP)(MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009) (holding, in the context of a claimant's application for SSI based on a mental disability, that the findings of the non-examining physician "should have been discounted or addressed with some scepticism because they were largely inconsistent with the examining physicians' findings and did not account for the 'subjective nature of the patient's disease'") (internal citations omitted).

Moreover, Dr. Chwastiak's assessment is corroborated by other evidence in the record. Both Dr. Francis and Dr. Bruce—physicians who examined plaintiff multiple times—expressed concerns about plaintiff's mental health and believed he might be clinically depressed. <u>See</u> R. at 234, 267, 490. Dr. Bruce referred plaintiff to Dr. Chwastiak, prescribed him Seroquel, and believed his pain might have a mental health etiology due to his history of trauma and abuse. <u>Id.</u> at 234, 267. Dr. Francis diagnosed him with a depressive disorder in July 2008. <u>Id.</u> at 490.

ALJ Thomas's finding that plaintiff's depression is non-severe was based on a non-examining physician's opinion and the mistaken belief that plaintiff was receiving no treatment for the impairment. <u>Id.</u> at 10. A board certified psychiatrist who examined plaintiff, on the other hand, believed that he suffered from symptoms of severe depression that could present a serious impairment in social, occupational, or school functioning. Two treating physicians who examined plaintiff on multiple occasions also expressed concerns about his mental health as well. The court therefore concludes that ALJ Thomas's finding is not based on substantial evidence. On remand, the Administration may either seek additional evidence of the severity of plaintiff's

depression in the form of a physician's personal examination and diagnosis of plaintiff or enter a finding that plaintiff's depression is a severe impairment.

### C. Evaluation of Plaintiff's Credibility

Plaintiff also alleges that ALJ Thomas erred in failing to set forth with specificity his reasons for finding some of his statements not credible. ALJ Thomas found that plaintiff's medically determinable impairments could "reasonably be expected to cause the alleged symptoms," but concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." R. at 11.

After an impairment is identified, the intensity and persistence of the claimant's symptoms are evaluated based on all available evidence, including the claimant's medical history, diagnosis, daily activities, prescribed treatments, efforts to work, and any functional limitations or restrictions caused by the symptoms. See 20 C.F.R. 416.929(a)-(c). "As a fact-finder, an ALJ is free to accept or reject testimony . . . . A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex re. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). An ALJ's failure to provide specific reasons for finding a claimant's testimony not credible is a sufficient basis for reversal and remand to the Administration. Id; see also Donahue v. Shalala, 851 F. Supp. 27, 33 n.11 (D. Conn. 1994) ("The ALJ's failure to make a sufficiently detailed finding on the

issue of credibility constitutes an independent basis on which the decision of the Secretary should be reversed.").

In support of his findings on plaintiff's credibility regarding the intensity of his symptoms, ALJ Thomas wrote that, "[w]hile the claimant has HIV, his CD4 count is well above 200 and he does not suffer from any opportunistic infections." R. at 11. However, most of plaintiff's claims regarding the intensity and persistence of his symptoms relate not to his HIV condition but rather to his chronic abdominal pain and abdominal hernia. See, e.g., id. at 19-20, 25-26. ALJ Thomas' decision contains little analysis as to why plaintiff's statements on his pain and other hernia symptoms are not credible.[3] Elsewhere in the decision, ALJ Thomas notes that, "after treatment [for the hernia] the claimant does quite well and there is no indication that this impairment would interfere with his ability to perform work activity at the light level of exertion," Id. at 9, though he does not indicate what evidence supports his finding that treatment has alleviated plaintiff's symptoms. In fact, contrary to the ALJ's decision, plaintiff reported unabated abdominal pain to Dr. Bruce in March 2007 and June 2007. Id. at 184-87, 351, 266-67. He also complained to Dr. Francis of chronic abdominal pain from July 2007 through May 2009, and there is no indication that his prescribed pain killers provided lasting relief. Pl.'s Mem. Ex. A; R at 469-71, 476-78, 482-84, 488-90.

---

[3]ALJ Thomas's credibility analysis appears to have been influenced by plaintiff's work history. His opinion notes that plaintiff has a "rather spotty work history" and that he lost his most recent job when he was incarcerated in 2006. R. at 9. After being released, plaintiff "did not return to his same job (of forklift operator) because his employer did not want him back." Id. Although a claimant's efforts to work are a legitimate factor in considering credibility, ALJ Thomas does not actually state that plaintiff's lack of effort in finding work is the reason the ALJ finds plaintiff's statements not credible to the extent that they conflict with the residual functional capacity assessment. Thus, the court can only speculate as to the ALJ's reasons for his credibility findings.

In Parker v. Astrue, 597 F.3d 920 (7th Cir. 2010), the Seventh Circuit reviewed an administrative law judge's opinion about a claimant's credibility that is strikingly similar to the language used in ALJ Thomas's opinion.  The ALJ's opinion in Parker stated that, "the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Id. at 921.  The Seventh Circuit found that this language "is not only boilerplate; it is meaningless boilerplate," because it "yields no clue to what weight the trier of fact gave the testimony."  Id. at 922.  Here, as well, ALJ Thomas's opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment" gives this court no guidance as to which parts of plaintiff's testimony ALJ Thomas found not credible and why.

The court therefore finds that ALJ Thomas' ruling does not set forth with sufficient specificity the reasons for finding plaintiff's statements regarding the intensity and persistence of his symptoms only credible to an extent.  On remand, the ALJ shall include specific reasons for his findings regarding plaintiff's credibility.

### D. Reliance on Medical-Vocational Guidelines

Lastly, plaintiff argues that ALJ Thomas erred in holding that a finding of not disabled was directed by Medical Vocational Rule 202.10.  The Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix II, Rules 200-204, are a shorthand way of evaluating vocational factors that take into consideration a claimant's age, education, and previous work experience.  For claimants whose characteristics match

the criteria of a particular grid rule, that rule "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Part 404, Subpart P, App'x 2 § 200.00(a). ALJ Thomas found that plaintiff's criteria matched that of Rule 202.10, which requires a finding of not disabled. The criteria of Rule 202.10 are: 1) closely approaching advanced age;[4] 2) less than a high school education but literacy and ability to communicate in English; and 3) unskilled work experience.

Plaintiff argues that his combination of significant exertional and non-exertional impairments renders the Medical-Vocational Guideline Rules inapplicable. Non-exertional impairments are defined as impairments that do not depend on the level of exertion, i.e., do not worsen as the claimant exerts himself more. Plaintiff claims that his depression and chronic abdominal, back, and knee pain are non-exertional limitations.

According to Rule 200.00(e), "[s]ince the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments."

> In particular, sole reliance on the [g]rid [s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform. In these circumstances, the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

---

[4]Closely approaching advance age is defined as the age range of 50-54. 20 C.F.R. Part 404, Subpart P, App'x 2 § 202.00(d).

Rosa, 168 F.3d at 78 (internal citations and quotations omitted); see also 20 C.F.R. Part 404, Subpart P, App'x 2 § 200.00(e)(2) ("[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.").

As this court found, supra at 20-23, the ALJ's decision that plaintiff's depression is a non-severe impairment is not supported by substantial evidence. Mental disabilities such as depression are non-exertional limitations. See 20 C.F.R. § 404.1569a(c)(1)(I). If the ALJ determines on remand that plaintiff's depression is severe, he will then have to evaluate if this severe impairment renders use of the Medical Vocational Guideline-Rules inappropriate. See, e.g., Dambrowski v. Astrue, 590 F. Supp. 2d 579, 584 (S.D.N.Y. 2008) ("Because the plaintiff claimed a significant nonexertional impairment, the ALJ was required to 'introduce the testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform.'") (citing Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986)). The court therefore remands this case for a redetermination of the applicability of Medical Vocational Guideline-Rules as appropriate after the ALJ's determination as to the severity of plaintiff's depression.

Based on Dr. Francis's findings in the February 20, 2008 Questionnaire that plaintiff suffered from chronic abdominal, back, and knee pain rated as moderate to

severe, plaintiff argues that his chronic abdominal, back, and knee pain are non-exertional limitations as well.  As discussed, <u>supra</u> at 18-19, this Questionnaire was not part of the record, so ALJ Thomas could not have evaluated plaintiff's impairments in light of the information contained therein.  Because the court is remanding this case for consideration of the opinion expressed by Dr. Francis in the Questionnaire, it will also remand for a determination as to whether the Questionnaire supports plaintiff's claims that his abdominal, back and knee pain are non-exertional limitations.

## V. CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings [Doc. No. 8] is granted.  This case is remanded for additional administrative proceedings on the following issues: 1) a redetermination as to whether the opinion expressed by treating physician Dr. Bruce in a form submitted to the Social Security Administration on March 14, 2007, is entitled to controlling weight; 2) consideration of the opinion expressed by treating physician Dr. Francis in the Multiple Impairment Questionnaire dated February 20, 2008; 3) either a finding that plaintiff's depression is a severe impairment or the obtaining of additional evidence regarding the severity of plaintiff's depression in the form of a physician's personal examination and diagnosis of plaintiff; 4) specific reasons for all findings regarding plaintiff's credibility; and 5) an analysis of whether application of the Medical-Vocational Guideline Rules is appropriate in light of the Administration's findings on the severity of plaintiff's depression.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 17th day of March, 2011.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge